| JS-6 | UNITED STATES DISTRICT COURT<br>CENTRAL DISTRICT OF CALIFORNIA<br><br>CIVIL MINUTES - GENERAL | Priority<br>Send<br>Enter<br>Closed<br>JS-5/JS-6<br>Scan Only |
|---|---|---|

**CASE NO.:** CV 14-04609 SJO (SHx)          **DATE:** January 25, 2016

**TITLE:** Martin Vogel v. Harbor Plaza Center, LLC

========================================================================
**PRESENT: THE HONORABLE S. JAMES OTERO, UNITED STATES DISTRICT JUDGE**

Victor Paul Cruz                                                    Not Present
Courtroom Clerk                                            Court Reporter

**COUNSEL PRESENT FOR PLAINTIFF(S):**      **COUNSEL PRESENT FOR DEFENDANT(S):**

Not Present                                                       Not Present

========================================================================
**PROCEEDINGS (in chambers): ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT** [Docket No. 54]

This matter is before the Court on Plaintiff Martin Vogel's ("Plaintiff") Motion for Default Judgment ("Application"), filed December 21, 2015. Defendant Harbor Plaza Center, LLC ("Defendant") has not opposed the Motion and has not appeared in this action since answering Plaintiff's Complaint on July 30, 2014. The Court found the matter suitable for disposition without oral argument and vacated the hearing set for February 8, 2016. *See* Fed. R. Civ. P. 78(b). For the following reasons, the Court **GRANTS IN PART** Plaintiff's Motion.

I.      FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff alleges the following in his Complaint, filed June 16, 2014. Plaintiff is a T-3 paraplegic as a result of a motorcycle accident, which has left him unable to walk or stand. (Compl. ¶ 8, ECF No. 1.) Plaintiff is physically disabled and requires the use of a wheelchair when traveling in public. (Compl. ¶ 8.) The Defendant owns, operates, and/or leases the Harbor Plaza Shopping Center ("Shopping Center") located at 13011-13129 Harbor Boulevard, Garden Grove, California. (Compl. ¶¶ 1, 7.) The Shopping Center is a sales and retail establishment, open to the public, intended for nonresidential use, and whose operation affects commerce. (Compl. ¶ 9.)

Plaintiff visited the Shopping Center and encountered barriers that interfered with his ability to use and enjoy the goods, services, privileges, and accommodations offered at the facility. (Compl. ¶ 10.) Plaintiff alleges that many, if not all, of the access aisles have slopes and cross slopes that exceed 2.0% because of encroaching built-up curb ramps. (Compl. ¶ 10.) Without a level access aisle, it is difficult for Plaintiff to unload or transfer from his vehicle because his wheelchair rolls and the lift's platform cannot stay level. (Compl. ¶ 10.) Plaintiff also alleges that many of the disabled parking spaces have slopes and cross slopes that exceed 2.0% because of encroaching built-up curb ramps. (Compl. ¶ 10.) These slopes have caused him similar difficulties. (Compl. ¶ 10.) Plaintiff further alleges that at least one of the spaces designated as van accessible is not actually van accessible. (Compl. ¶ 10.) This forces Plaintiff to unload or transfer into an adjacent parking space and puts him at risk of being struck by an incoming vehicle.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

CASE NO.:   <u>CV 14-04609 SJO (SHx)</u>          DATE:   <u>January 25, 2016</u>

(Compl. ¶ 10.)  Plaintiff claims these barriers denied him full and equal access to the Shopping Center.  (Compl. ¶ 10.)

As a result of the barriers, Plaintiff is deterred from visiting the Shopping Center because he believes the Shopping Center's goods, services, facilities, privileges, advantages, and accommodations are unavailable to physically disabled patrons such as himself.  (Compl. ¶ 11.)  Moreover, Plaintiff continues to be deterred from visiting the Shopping Center because the barriers present future threats of injury.  (Compl. ¶ 11.)

Additionally, Plaintiff alleges Defendant has not removed the barriers even though it:  (1) knew the areas of the Shopping Center where access would be challenging for physically disabled persons; (2) had the financial resources to do so; and (3) possessed sufficient control and authority to remove the impediments to wheelchair access and to comply with the Americans with Disabilities Act Accessibility Guidelines ("ADAAG") and Title 24 Regulations.  (Compl. ¶¶ 13-14.)  Plaintiff claims Defendant has refused to remove the barriers and to seek an unreasonable hardship exemption to excuse the non-compliance.  (Compl. ¶ 13.)

Plaintiff filed the instant action against Defendant in this Court on the basis of federal question jurisdiction.  (Compl. ¶ 3.)  The Complaint lists four causes of action:  (1) violation of the Americans with Disabilities Act ("ADA"); (2) violation of the Disabled Persons Act ("DPA"); (3) violation of the Unruh Civil Rights Act ("Unruh Act"); and (4) non-compliance of the California Health and Safety Code ("Health & Safety Code").  (*See generally* Compl.)

On July 30, 2014, Defendant filed an Answer to the Complaint (*See generally* Answer to Complaint ("Answer"), ECF No.13.)  Defendant, however, has not appeared in the case since filing is Answer, and the Court accordingly struck the Answer on December 2, 2015.  (*See* Minutes of Pretrial Conference, ECF No. 42.)  On October 20, 2015, Plaintiff filed an *ex parte* application for an entry of default against Harbor Plaza Center, and the Clerk entered default against Harbor Plaza Center on October 31, 2015.  (*Ex Parte* Appl. for Clerk to Enter Default, ECF No. 47; Default by Clerk, ECF No. 48.)

II.     <u>DISCUSSION</u>

Obtaining a default judgment is a two-step process.  First, the plaintiff must establish default by affidavit or otherwise, after which the court clerk enters default.  Fed. R. Civ. P. 55(a).  Second, the plaintiff must apply to the court for a default judgment if the plaintiff's claim is for a sum that is not certain or a sum that cannot be made certain by computation.  Fed. R. Civ. P. 55(b).

    A.     <u>Procedural Requirements for Obtaining a Default Judgment</u>

Pursuant to the Local Rules of the Central District of California, applications for the entry of default judgment must be accompanied by a declaration that includes the following information:

(a) When and against what party the default was entered;
(b) The identification of the pleading to which default was entered;
(c) Whether the defaulting party is an infant or incompetent person, and if so, whether that person is represented by a general guardian, committee, conservator or other representative;
(d) That the Servicemembers Civil Relief Act (50 U.S.C. App. § 521) does not apply; and
(e) That notice has been served on the defaulting party, if required by [Fed. R. Civ. P.] 55(b)(2).

L.R. 55-1; *see also* Fed. R. Civ. P. 55(b)(2).

The Court finds that Plaintiff has satisfied each of these procedural requirements. (*See* Decl. of Scottlynn Hubbard ("Hubbard Decl."), ECF No. 53-2.) First, the clerk entered default on October 21, 2015 and named Defendant Harbor Plaza Center LLC as the defaulting party. (*See* Default by Clerk.) Second, Plaintiff identified the pleading to which default was entered. (*See* Proof of Service Executed by Plaintiff, ECF No. 10.) Third, the defaulting party is not an infant or incompetent person. (Hubbard Decl. ¶ 3.) Fourth, the Servicemembers Civil Relief Act does not apply in this case. (Hubbard Decl. ¶ 3.) Finally, Plaintiff served the defaulting Defendant with notice of the Application for Default Judgment. (Hubbard Decl. ¶ 5; *see also* Proof of Service, ECF No. 49.)

  B. <u>Substantive Requirements for Obtaining a Default Judgment</u>

A district court's decision to grant or deny default judgment is discretionary. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). In exercising its discretion, a court considers the following seven factors:

(1) The possibility of prejudice to the plaintiff;
(2) The merits of plaintiff's substantive claim;
(3) The sufficiency of the complaint;
(4) The sum of money at stake in the action;
(5) The possibility of a dispute concerning material facts;
(6) Whether the default was due to excusable neglect; and
(7) The strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). Once the court clerk has entered a party's default, "the well-pleaded factual allegations of the complaint are taken as true, except for those allegations relating to damages." *Philip Morris USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 498 (C.D. Cal. 2003) (citing *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917 (9th Cir. 1987)). The Court considers each of the *Eitel* factors in turn.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

CASE NO.: **CV 14-04609 SJO (SHx)**          DATE: **January 25, 2016**

### 1. Possibility of Prejudice to Plaintiff

Under the first *Eitel* factor, the Court examines whether a plaintiff will be prejudiced if the request for entry of default judgment is denied. *Eitel*, 782 F.2d at 1471. A plaintiff who is denied a default judgment and is subsequently left without other recourse for recovery has a basis for establishing prejudice. *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002). Although Defendant filed an Answer, the Answer generally denies each and every allegation contained in the Complaint, and Defendant has failed to appear in the instant action since filing its Answer. (*See* Answer.) Indeed, since that the Court has stricken the Answer, (*see* Minutes of Pretrial Conference), it does not appear as though Plaintiff will be able to obtain any other form of relief unless default judgment is entered. The Court finds that Plaintiff will likely suffer prejudice if default judgement is not entered against Defendant, and concludes this factor weighs in favor of issuing a default judgment.

### 2, 3. Merits of the Substantive Claim and Sufficiency of the Complaint

The second and third *Eitel* factors focus on the merits of a plaintiff's substantive claims and the sufficiency of the complaint. *See Eitel*, 782 F.2d at 1471. Together, these two factors require that a plaintiff state claims upon which recovery is possible. *PepsiCo, Inc.*, 238 F. Supp. 2d at 1175. In the Complaint, Plaintiff asserts four causes of action against Defendant: (1) violation of the ADA; (2) violation of the DPA; (3) violation of the Unruh Act; and (4) non-compliance of the California Health and Safety Code. (*See generally* Compl.) The Court now examines whether Plaintiff has properly pled facts that would allow recovery under these statutes.

#### a. Americans with Disabilities Act of 1990

The ADA prohibits discrimination based on disability in the full and equal enjoyment of goods, services, facilities, privileges, and accommodations offered by any person who owns, operates, or leases a place of public accommodation. 42 U.S.C. § 12182(a). The ADA specifically prohibits failing to remove architectural barriers which are structural in nature in existing facilities where such removal is readily achievable. 42 U.S.C. § 12182(b)(2)(A)(iv). The term "readily achievable" is defined as "easily accomplishable and able to be carried out without much difficulty or expense." 42 U.S.C. § 12181(9). Additionally, the ADA requires that facilities altered in a manner that affects their usability must be made readily accessible to individuals with disabilities to the maximum extent feasible. 42 U.S.C. § 12183(a)(2). The ADA also requires reasonable modification in policies, practices, or procedures, when necessary to afford such goods, services, facilities, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of these goods, services, facilities, or accommodations. 42 U.S.C. § 12182(b)(2)(A)(ii).

To prevail on his ADA claim, Plaintiff "must show that (1) [he] is disabled within the meaning of the ADA; (2) the defendant is a private entity that owns, leases, or operates a place of public

accommodation; and (3) the plaintiff was denied public accommodations by the defendant because of [his] disability." *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 730 (9th Cir. 2007) (citing 42 U.S.C. §§ 12182(a)-(b)).

Here, Plaintiff has sufficiently alleged that he is disabled, (Compl. ¶ 8), and that Defendant owns, operates, or leases an establishment that is a place of public accommodation (Compl. ¶¶ 7,9).

Additionally, in order to prevail on an "ADA claim of discrimination on account of one's disability . . . the plaintiff must also prove that: (1) the existing facility at the defendant's place of business presents an architectural barrier prohibited under the ADA, and (2) the removal of the barrier is readily achievable." *Parr v. L & L Drive-Inn Restaurant*, 96 F. Supp. 2d 1065, 1085 (D. Haw. 2000) (citations omitted); *see also Johnson v. Beahm*, No. 2:11-CV-0294-MCE, 2011 WL 5508893, at *2 (E.D. Cal. Nov. 8, 2011).

"In general, a facility is 'readily accessible to and usable by individuals with disabilities' if it meets the requirements promulgated by the Attorney General in the 'ADA Accessibility Guidelines' or the 'ADAAG,' which is essentially an encyclopedia of design standards." *Oliver v. Ralphs Grocery Co.*, 654 F.3d 903, 905 (9th Cir. 2011). "Because the Attorney General developed the ADAAG pursuant to an express delegation of authority by Congress, § 12186(b), courts must give ADAAG 'controlling weight unless [it is] arbitrary, capricious, or manifestly contrary to the statute.'" *Id.* at 905 n.4.[1] "The ADAAG provides the objective contours of the standard that architectural features must not impede disabled individuals' full and equal enjoyment of accommodations." *Chapman v. Pier 1 Imps. (U.S.) Inc.*, 631 F.3d 939, 945 (9th Cir. 2011). Accordingly, "[b]ecause the ADAAG establishes the technical standards required for 'full and equal enjoyment,' if a barrier violating these standards relates to a plaintiff's disability, it will impair the plaintiff's full and equal access, which constitutes 'discrimination' under the ADA." *Id.* at 947.

Under the ADA, van parking spaces must be 132 inches wide, at minimum, and have an adjacent access aisle at least 60 inches wide. ADAAG 2010 Standards §§ 502.2, 502.3.1. Access aisles are required to be nearly level in all directions to the parking spaces they serve, with a slope no steeper than 1:48 (2.082%). ADAAG § 502.4. "Built-up curb ramps are not permitted to project into access aisles and parking spaces because they would create slopes greater than 1:48." *Id.*

The Complaint alleges that Defendant's parking facilities violate these sections of the ADAAG and 2010 Standards by including encroaching built-up curb ramps and lacking adequate van parking spaces. (Compl. ¶ 10.) As such, Plaintiff has sufficiently pled that the Shopping Center contains

---

[1] The ADAAG were originally established in 1991 ("1991 Standards"), and were updated in 2010 ("2010 Standards"). *See* 28 C.F.R. § 36, App. A, Subpart A. In his Complaint, Plaintiff does not allege which Standards apply to Defendant's parking facility. (*See generally* Compl.)

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

**CASE NO.:** <u>CV 14-04609 SJO (SHx)</u>     **DATE:** <u>January 25, 2016</u>

architectural barriers under the ADA that discriminate against him on account of his disability. Plaintiff has also alleged that Defendant was aware of the barriers and that Defendant had the means and ability to make the change. (Compl. ¶¶ 13-14.) Accepting all the allegations in the Complaint as true, Plaintiff has adequately stated a claim for violation of the ADA.

        b.    <u>Disabled Persons Act</u>

Plaintiff also states claims for violations under the California's DPA. (Compl. ¶¶ 33-36.) The DPA provides, in relevant part, that "[i]ndividuals with disabilities shall be entitled to full and equal access . . . to accommodations, advantages, . . . and privileges of . . . places of public accommodation, amusement . . . and other places to which the general public is invited . . ." Cal. Civ. Code § 54.1(a)(1). Moreover, the DPA provides that "[a] violation of the right of an individual under the American with Disabilities Act of 1990 also constitutes a violation of this section . . ." Cal. Civ. Code § 54.1(d). Since Plaintiff has adequately pled a violation under the ADA, he has also sufficiently stated a claim under the DPA.

        c.    <u>Unruh Civil Rights Act</u>

Plaintiff further alleges that Defendant violates the Unruh Act. (Compl. ¶¶ 40-44.) The Unruh Act provides: "all persons within the jurisdiction of this state . . . no matter what their . . . disability . . . are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever." Cal. Civ. Code § 51(b). The Unruh Act also provides that "[n]o business establishment of any kind whatsoever shall discriminate against . . . any person in this state on account of his or her disability." Cal. Civ. Code § 51.5(a). The Unruh Act specifically incorporates an individual's rights under the ADA. Cal. Civ. Code § 51(f) ("A violation of the right of any individual under the Americans with Disabilities Act of 1990 shall also constitute a violation of this section."). Because Plaintiff has adequately pled a violation of the ADA, he has also sufficiently stated a claim under the Unruh Act.

        d.    <u>California Health and Safety Code</u>

Finally, Plaintiff alleges non-compliance with the California Health and Safety Code. (Compl. ¶ 48-50.) Section 19955 of the Health and Safety Code provides that "public accommodations or facilities constructed in this state . . . adhere to . . ." section 4450 of the California Government Code. Cal. Health & Safety Code § 19955(a). The relevant California Government Code sections provide that "all buildings, structures, . . . curbs, and related facilities, constructed in this state . . . shall be accessible to and usable by persons with disabilities." Cal. Gov. Code § 4450(a). "In no case shall the State Architect's regulations and building standards prescribe a lesser standard of accessibility or usability than provided by the Accessibility Guidelines . . . to implement the Americans with Disabilities Act of 1990." Cal. Gov. Code § 445(c). Again, because Plaintiff has adequately pled a violation of the ADA, he has also sufficiently stated a claim under the Health and Safety Code.

JS-6
# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

**CASE NO.:** <u>CV 14-04609 SJO (SHx)</u>  **DATE:** <u>January 25, 2016</u>

Plaintiff has thus pled sufficient facts to support each cause of action. Accordingly, the second and third factors weigh in favor of issuing default judgment.

####    4.    Amount of Damages

The fourth *Eitel* factor concerns the amount Plaintiff requests in monetary damages. *See Eitel* 782 F.2d at 1471. Default judgment is disfavored where the sum of money at stake is too large or unreasonable in relation to the defendant's conduct. *See Truong Giang Corp. v. Twinstar Tea Corp.*, No. C 06-03594 JSW, 2007 WL 1545173, at *12 (N.D. Cal. May 29, 2007) (citing *Totten v. Hurrell*, No. 00-2718, 2001 U.S. Dist. LEXIS 20259, at *2 (N.D. Cal. Nov. 28, 2001)).

In the Motion, Plaintiff requests that the Court award him a judgment of $52,262.08—which includes $12,000 in statutory damages under the Unruh Act, $36,671.25 in attorneys' fees, and $3,590.83 in costs—and an injunction requiring Defendant to remove the architectural barriers identified in the Complaint. (Mot. 13-20.)

Although the Court addresses below the propriety of awarding Plaintiff the requested relief, the Court finds that the award is not unreasonable in relation to Defendant's conduct, where Defendant has answered the Complaint but failed to abide by the Court's scheduling and mediation orders and has been sanctioned as a result of its conduct. Moreover, statutory damages are prescribed by statute, providing further support for the reasonableness of Plaintiff's requested award. Thus, the Court finds that this factor weighs slightly in favor of issuing a default judgment.

####    5.    Possibility of a Dispute Concerning Material Facts

The fifth *Eitel* factor examines the likelihood of dispute between the parties regarding the material facts surrounding the case. *Eitel*, 782 F.2d at 1471-72. When a complaint and motion for default judgment are unopposed, the factor is neutral because the possibility of a dispute is unknown. *Bd. of Trs. of Laborers Health & Welfare Trust Fund v. Perez*, No. C 10-2002, 2011 WL 6151506, at *8 (N.D. Cal. Nov. 7, 2011). Here, although Defendant filed an Answer, the Court has since struck the Answer because of Defendant's repeated failure to participate in the case. (*See generally* Minutes of Pretrial Conference.) Defendant has not opposed Plaintiff's Motion, and the Court finds that this factor is therefore neutral.

####    6.    Possibility of Excusable Neglect

The sixth factor considers whether the defendant's default is the result of excusable neglect. *Eitel*, 782 F.2d at 1472. The possibility of excusable neglect is remote where the defendant is provided proper notice of the pending suit, but does not contact the court or the plaintiff in any manner. *See Philip Morris*, 219 F.R.D. at 501.

Case 2:14-cv-04609-SJO-SH Document 54 Filed 01/25/16 Page 8 of 12 Page ID #:248

JS-6
**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

CASE NO.: <u>CV 14-04609 SJO (SHx)</u>    DATE: <u>January 25, 2016</u>

Here, although Defendant filed a timely Answer, the Answer was largely unresponsive. (*See* Answer.) Moreover, Defendant has failed to appear in this action since filing its Answer, including at the scheduling conference and two pretrial conferences. (*See* Hubbard Decl. ¶ 5; Minutes of Scheduling Conference, ECF No. 20; Minutes of Pretrial Conferences, ECF Nos. 39, 42.) The Court has also issued sanctions in the amount of $2,947.44 against Defendant for failing to obey the Court's scheduling and mediation orders. (Order Granting Pl.'s Mot. for Sanctions, ECF No. 36.) In light of the above, the Court does not find any possibility of excusable neglect on the part of Defendant. Thus, this factor weighs in favor of issuing a default judgment.

   7. <u>Public Policy Favoring Decision on the Merits</u>

The final *Eitel* factor requires the Court to consider the strong federal policy in favor of making decisions on the merits. *Eitel*, 782 F.2d at 1472. Courts have recognized, however, that "this preference, standing alone, is not dispositive." *PepsiCo*, 238 F. Supp. 2d at 1177 (citation omitted). Moreover, a defendant's failure to answer a plaintiff's complaint "makes a decision on the merits impractical, if not impossible." *Id; see also TVB Holdings (USA) Inc. v. Emon Inc.,* No. 13-CV-624-JLS*,* 2014 WL 3717889, at *4 (C.D. Cal. July 23, 2014). Under Rule 55(a), "termination of a case before hearing the merits is allowed whenever a defendant fails to defend an action." *PepsiCo*, 238 F. Supp. 2d at 1177. As discussed above, the Court has struck Defendant's Answer, leaving Plaintiff's Complaint unanswered. Coupled with Defendant's failure to respond to this instant Application and overall lack of participation, this factor weighs in favor of granting default judgment.

On balance, the Court finds that the application of the *Eitel* factors to this case entitles Plaintiff to a default judgment against Defendant.

  C. <u>Relief Sought</u>

   1. <u>Statutory Damages</u>

Plaintiff requests $12,000 in statutory damages for three alleged violations of the Unruh Act. (Mot. 15-16.) In support of this request, Plaintiff has submitted a declaration wherein he identifies three aspects of Defendant's Shopping Center that have affected his disability, and also avers that he was deterred from visiting the Shopping Center on three occasions. (Decl. Martin Vogel in Supp. Mot. ("Vogel Decl.") ¶¶ 3-4, ECF No. 53.)

Any person denied the rights provided by the Unruh Act is entitled to recover either three times the amount of actual damages proved to the court, or statutory damages in the amount of no less than $4,000 for each offense. Cal. Civ. Code § 52(a). Statutory damages are available without proof of actual damages and are particularly warranted in cases in which the defendant "fails to appear and respond to [the] [p]laintiff's Complaint . . . [making it impossible for the plaintiff] to pursue discovery [and] thereby prejudicing [the plaintiff's] ability to establish its actual damages."

**CASE NO.:**   **CV 14-04609 SJO (SHx)**              **DATE:**   **January 25, 2016**

*Baker v. G.C. Servs. Corp.*, 677 F.2d 775, 781 (9th Cir. 1982); *Craigslist, Inc. v. Naturemarket, Inc.*, 694 F. Supp. 2d 1039, 1062 (N.D. Cal. 2010).

District courts have wide discretion in determining the amount of statutory damages to be awarded, and should consider what is just based on all of the particular circumstances of the case. *See L.A. News Serv. v. Reuters Television Int'l, Ltd.*, 149 F.3d 987, 996 (9th Cir. 1998). "When a plaintiff is alleging multiple claims for statutory damages, the [Unruh Act] requires the court to consider the reasonableness of the plaintiff's conduct in light of his duty to mitigate damages." *Johnson v. Patel*, No. CIV. 2:14-02078 WBS DAD, 2015 WL 5560257, at *3 (E.D. Cal. Sept. 21, 2015). Section 55.56(h) applies to deterrence claims and provides: "In assessing liability under subdivision (d), in an action alleging multiple claims for the same construction-related accessibility violation on different particular occasions, the court shall consider the reasonableness of the plaintiff's conduct in light of the plaintiff's obligations, if any, to mitigate damages." Cal. Civ. Code § 55.56(h).

Although courts frequently award statutory damages in ADA/Unruh Act cases on the order of $12,000, the ones of which the court is aware were decided at the summary judgment stage or at trial, rather than on motions for default judgment. *See, e.g.*, *Vogel v. Rite Aid Corp.*, No. 13-cv-288-MMM EX, 2014 WL 211789, at *11 (C.D. Cal. Jan. 17, 2014) (awarding plaintiff a total of $12,000 for plaintiff's three visits); *Yates v. Vishal Corp.*, Case No. 11-cv-00643-JCS, 2013 WL 6073516, at *5 (N.D. Cal. Nov. 18, 2013) (awarding $12,000 based on three occasions that plaintiff visited defendant's hotel and restaurant); *McCune v. Singh*, No. 10-cv-02207-JAM, 2012 WL 2959436 (E.D. Cal. July 19, 2012), *motion for relief from judgment denied*, 10-cv-02207-JAM, 2013 WL 3367515, at *5 (E.D. Cal. July 5, 2013) ("Plaintiff visited the Plaza four times to patronize its stores and encountered barriers to access each time in violation of the ADA, and he is therefore entitled to $16,000 in damages under the Unruh Act, $4,000 for each visit."); *Freezor v. Del Taco, Inc.*, 431 F. Supp. 2d 1088, 1091 (S.D. Cal. 2005) ("[T]he Court finds Plaintiff is entitled to the statutory minimum of $12,000—$4,000 for each time he patronized the Restaurant.").

Where, as here, a plaintiff requests that the court award statutory damages for each instance of being deterred from defendant's property, the court must consider whether plaintiff has met his duty to mitigate damages. Cal. Civ. Code § 55.56(g) ("[Section 55.56] does not alter . . . any legal obligation of a party to mitigate damages."). "One way that plaintiffs may fail to meet their duty is to make multiple visits to the same facility before they could reasonably expect that the barrier was corrected; this is sometimes referred to as stacking." *Vishal Corp.*, 2013 WL 6073516 at *4. In *Ramirez v. Sam's for Play*, for example, the court denied summary judgment for plaintiffs on the issue of multiple statutory damages because a factual question remained as to whether plaintiffs had met their duty to mitigate their damages. No. 11-cv-1370-MEJ, 2013 WL 4428858, at *8 (N.D. Cal. Aug. 15, 2013) (denying motion for summary judgment on the issue of multiple statutory damages).

**CASE NO.:   CV 14-04609 SJO (SHx)**                    **DATE:   January 25, 2016**

Here, Plaintiff avers that "[o]n one occasion, [he] patronized two fo the retail establishments located in the Shopping Center and encountered access barriers in the parking areas in front of those establishments." (Vogel Decl. ¶ 3.) Plaintiff further alleges that he "was also deterred from visiting the Shopping Center on two other occasions." (Vogel Decl. ¶ 3.) The Court finds that Plaintiff has failed to prove that he mitigated damages, as he does not explain why he returned to the Shopping Center on two occasions, even knowing that barriers in the parking areas affected his disability and presented him with access difficulties. This shortcoming is particularly salient in the default judgment context, where there exists a substantial risk that a plaintiff could "stack" his damages without opposition from a non-present defendant. *See Johnson v. Mateo Development, LLC*, No. 2:14-cv-1942-KJM-KJN, 2015 WL 128133, at *5 (E.D. Cal. Jan. 8, 2015) ("Although Cal. Civ. Code § 52(a) may permit a plaintiff to obtain the minimum statutory damages for each obstructed visit to a facility, a plaintiff cannot simply visit a facility more often to increase the amount of potential statutory damages. In this case, plaintiff made no showing as to why he continued to return to the Skyway Market after encountering the above-mentioned architectural barriers during his first visit.").

Nevertheless, the Court finds that Plaintiff has adequately alleged a violation of the Unruh Act, and awards Plaintiff minimum statutory damages corresponding to one visit to Defendant's Shopping Center. Accordingly, the Court **GRANTS** Plaintiff $4,000 in statutory damages.

   2. <u>Injunctive Relief</u>

Plaintiff also seeks injunctive relief under the ADA and the Unruh Act compelling Defendant to provide accessible parking. A court may grant injunctive relief for violations of the Unruh Act under § 52.1(h). To be entitled to injunctive relief under 42 U.S.C. § 12188(a)(2), Plaintiff must show that Defendant has violated the ADAAG. "In the case of violations [of the accessibility provisions] of this title, injunctive relief shall include an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities . . . ." *Id.*

Plaintiff need not satisfy the other prerequisites generally needed for injunctive relief since "[t]he standard requirements for equitable relief need not be satisfied when an injunction is sought to prevent the violation of a federal statute which specifically provides for injunctive relief." *Moeller v. Taco Bell*, 816 F. Supp. 2d 831, 859 (N.D. Cal. 2011) (*quoting Antoninetti v. Chipotle Mexican Grill, Inc.*, 643 F.3d 1165, 1175-76 (9th Cir. 2010)). Thus, injunctive relief is proper when architectural barriers at defendant's establishment violate the ADA and the removal of the barriers is readily achievable. *See, e.g., Moreno v. La Curacao*, 463 Fed. App'x 669, 670 (9th Cir. 2011) (Unpub. Disp.); *Johnson v. Singh*, No. 2:10-CV-2547-KJM, 2011 WL 2709365, at *3 (E.D. Cal. July 11, 2011). The ADA defines the term "readily achievable" as "easily accomplishable and able to be carried out without much difficulty or expense." 42 U.S.C. § 12181(9).

Here, although Plaintiff has stated a claim under the ADA with respect to the Shopping Center's allegedly inadequate access aisles and disabled parking spaces, Plaintiff has provided no

evidence that removal of these barriers would be "readily achievable." Plaintiff has provided no evidence, whether photographic or otherwise, of these deficiencies, nor has Plaintiff provided any evidence of the labor or cost that would be required in order for Defendant to comply with the ADA. Notwithstanding this lack of evidence, Plaintiff has made a prima facie showing tha Defendant violated the ADAAG, and therefore is entitled to an order compelling Defendant to remove the architectural barriers identified in the Complaint insofar as they violate the ADAAG. Moreover, the Court finds that it would be "readily achievable" for Defendant to create a "space designated as being van accessible" that is "actually van accessible," as federal regulations specify the creation of designated accessible parking spaces as an example of a "readily achievable" public accommodation modification. *See Heatherly v. GD LIquor and Food*, Case No. 14-cv-03458-RS, 2015 WL 4967255, at *3 (N.D. Cal. Aug. 20, 2015) (citing 28 C.F.R. § 36.304(b)).

Accordingly, Defendant is **ORDERED** to: (1) install a handicap and van-accessible parking stall with a width greater than or equal to 132 inches, with (a) appropriate signage; (b) a curb cut offering walkway access to the entrance of Defendant's Shopping Center located at 13011-13129 Harbor Boulevard, Garden Grove, CA 92843; and (c) an adjacent access aisle at least 60 inches wide that is nearly level in all directions to the parking spaces they serve, with a slope no steeper than 2.082%; and (2) ensure that no disabled parking spaces have slopes or cross-slopes exceeding 2.082% due to encroaching build-up curb ramps. Such measures must be completed on or before November 1, 2016.

> 3.  Attorney's Fees, Expenses, and Costs

Plaintiff also requests attorney's fees and costs in the amount of $36,671.25 and $3,590.83, respectively. (Mot. 20.) Attorney's fees in default judgments are set by Local Rule 55-3. Absent special circumstances, in judgments between $1,000.01 and $10,000, the court sets attorneys fees at $300 plus 10% of the amount awarded over $1,000. *See* L.R. 55-3. Moreover, as the prevailing party, Plaintiff is entitled to costs as set forth in 29 U.S.C. § 1920, Federal Rule of Civil Procedure 54(d)(1), and Local Rule 54.

The Court has awarded Plaintiff $4,000 in statutory damages against Defendant. Therefore, Local Rule 55-3 recommends an award of attorney's fees in the amount of $600. Plaintiff argues that "special circumstances exist" in this case as a result of Defendant's failure to appear at multiple court-ordered hearings and mediation. (Mot. 19.) Although the Court has already sanctioned Defendant in the amount of $2,947.44 for its litigation conduct, (Order Granting Pl.'s Mot. for Sanctions), the Court finds that expenses and costs necessitated by Defendant and defense counsel's failure to attend the scheduling and two pretrial conferences should be reimbursable as well. The Court does not believe, however, that further modification of the Local Rule's recommended attorneys' fee award is necessary here. The Court therefore awards Plaintiff $600 in attorneys' fees. Thus, the Court accepts counsel's declaration regarding costs—which includes airline, hotel, and rental car expenses not normally reimbursable under Local Rule 54-3—and

accordingly awards Plaintiff the full requested $3,590.83 in costs in addition to $600 in attorneys' fees. (*See* Decl. Scottlynn Hubbard in Supp. Mot., Ex. A.)

III.    RULING

For the foregoing reasons, the Court **GRANTS IN PART** Plaintiff's Motion for Default Judgment. Judgment shall be entered for Plaintiff in the amount of $8,190.83 from Defendant, consisting of statutory damages, attorneys' fees, and costs. The Court hereby enters an injunction **ORDERING** Defendant Harbor Plaza Center, LLC to: (1) install a handicap and van-accessible parking stall with a width greater than or equal to 132 inches, with (a) appropriate signage; (b) a curb cut offering walkway access to the entrance of Defendant's Shopping Center located at 13011-13129 Harbor Boulevard, Garden Grove, CA 92843; and (c) an adjacent access aisle at least 60 inches wide that is nearly level in all directions to the parking spaces they serve, with a slope no steeper than 2.082%; and (2) ensure that no disabled parking spaces have slopes or cross-slopes exceeding 2.082% due to encroaching build-up curb ramps. Such measures must be completed on or before November 1, 2016.

IT IS SO ORDERED.