**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| MARTIN VOGEL,<br>*Plaintiff-Appellant*,<br><br>v.<br><br>HARBOR PLAZA CENTER,<br>LLC,<br>*Defendant-Appellee.* | No. 16-55229<br><br>D.C. No.<br>2:14-cv-04609-SJO-SH<br><br>OPINION |

Appeal from the United States District Court
for the Central District of California
S. James Otero, District Judge, Presiding

Submitted October 2, 2017[*]
Pasadena, California

Filed June 25, 2018

Before:  Andrew J. Kleinfeld, Susan P. Graber,
and Morgan Christen, Circuit Judges.

Opinion by Judge Graber;
Concurrence by Judge Christen;
Dissent by Judge Kleinfeld

---

[*] The panel unanimously concludes that this case is suitable for decision without oral argument.  Fed. R. App. P. 34(a)(2).

## SUMMARY[**]

### Attorneys' Fees

The panel vacated the district court's award, pursuant to a local rule, of attorneys' fees to the plaintiff following the entry of a default judgment in an action brought under the Americans with Disabilities Act.

The panel held that the plaintiff was entitled to a reasonable attorney's fee under 42 U.S.C. § 12205 because he was the prevailing party on his ADA claim. The district court declined to apply the lodestar approach. Instead, it interpreted the schedule of fees described in the Central District's Local Rule 55-3 as prescribing a presumptively correct award of fees. The panel read the local rule to require a different procedure. The panel concluded that when a party seeks a fee in excess of the schedule and timely files a written request to have the fee fixed by the court, then the court must hear the request and award a "reasonable" fee. The court must calculate a "reasonable" fee in the usual manner, without using the fee schedule as a starting point. The panel remanded the case to the district court for reconsideration.

Concurring, Judge Christen wrote that she joined the court's opinion, which was consistent with the Supreme Court's longstanding rule that fees are awarded to prevailing parties in civil rights cases, including ADA cases, according to the lodestar method. She wrote separately to clarify that, in her view, the correct method for calculating fees in an

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

ADA lawsuit ending in default judgment in the Central District of California should not hinge on whether a prevailing party opts out of the local fee schedule.

Dissenting, Judge Kleinfeld wrote that the district court properly used the local rule's fee schedule for default judgments, rather than the lodestar, as the starting point and acted within its discretion to reject an increase.

## COUNSEL

Scottlynn J. Hubbard, Disabled Advocacy Group APLC, Chico, California, for Plaintiff-Appellant.

No appearance for Defendant-Appellee.

## OPINION

GRABER, Circuit Judge:

In this action brought under the Americans with Disabilities Act of 1990 ("ADA"), Plaintiff Martin Vogel timely appeals the district court's award of $600 in attorney's fees following the entry of a default judgment. Defendant Harbor Plaza Center, LLC, originally filed an answer and took other actions but, before trial, failed to appear. The district court eventually struck the answer, entered a default judgment against Defendant, and awarded fees pursuant to a local rule. By eschewing the ordinary considerations that apply when calculating fees in ADA cases, the district court abused its discretion. Accordingly, we vacate the award of fees and remand for reconsideration.

## FACTUAL AND PROCEDURAL HISTORY

Plaintiff Martin Vogel is a paraplegic who uses a wheelchair when traveling in public. He visited the Harbor Plaza Shopping Center and, in the parking lot, encountered barriers that prevented him from fully enjoying the shopping center.

In June 2014, Plaintiff filed this action against the shopping center's owner, Defendant Harbor Plaza Center, LLC. He alleged violations of state law and the ADA, and he sought declaratory and injunctive relief, statutory damages, and attorney's fees. In July 2014, Defendant, represented by counsel, filed an answer to the complaint. The court scheduled trial for October 2015. In September 2014, Defendant filed a request to substitute counsel, which the court approved. The request was signed by Defendant's

initial lawyer, its new lawyer, and its representative (Defendant's vice-president).  Defendant and Defendant's lawyer thereafter stopped appearing.  In the meantime, Plaintiff dutifully prepared for trial and, pursuant to the district court's scheduling order, filed motions in limine, a witness list, an exhibit list, and a pretrial brief.

At the scheduled pretrial conference, in September 2015, Defendant and its lawyer failed to appear.  Plaintiff expressed concern that Defendant was unaware of the proceedings.  The court shared that concern and noted that, in 2005, Defendant's lawyer had been convicted of a federal corruption charge.   The court continued the pretrial conference and ordered Plaintiff to provide notice to Defendant's lawyer and to Defendant's representative of the now-postponed conference.  Plaintiff provided notice, but Defendant and Defendant's lawyer failed to appear at the continuation of the pretrial conference.  The court struck Defendant's answer and ordered that Plaintiff "may proceed by way of entry of default and then default judgment."

Plaintiff filed an ex parte application for default, which the court entered.  But Plaintiff remained concerned that Defendant was unaware of the proceedings.  Instead of filing a motion for default judgment, Plaintiff filed an ex parte application for the court to reschedule the pretrial conference and to order Defendant's representative to appear personally. The district court denied the application without explanation. The court later ordered Plaintiff, upon pain of dismissal, to file a motion for default judgment.

Plaintiff then filed a motion for default judgment, seeking injunctive relief, statutory damages, attorney's fees, and costs.  Plaintiff sought $36,671.25 in attorney's fees.  In an

6          VOGEL V. HARBOR PLAZA CENTER

attached declaration, Plaintiff's lawyer provided the court with a seven-page itemized list of the work that his firm had performed.

The district court granted Plaintiff's motion for default judgment. The court entered an injunction ordering Defendant to make specific structural changes to the parking lot:

> (1) install a handicap and van-accessible parking stall with a width greater than or equal to 132 inches, with (a) appropriate signage; (b) a curb cut offering walkway access to the entrance of Defendant's Shopping Center located at 13011–13129 Harbor Boulevard, Garden Grove, CA 92843; and (c) an adjacent access aisle at least 60 inches wide that is nearly level in all directions to the parking spaces they serve, with a slope no steeper than 2.082%; and (2) ensure that no disabled parking spaces have slopes or cross-slopes exceeding 2.082% due to encroaching build-up curb ramps.

The court awarded Plaintiff statutory damages of $4,000, and it awarded Plaintiff all of his requested costs, $3,590.83.[1]

On Plaintiff's request for attorney's fees, the district court consulted the Local Rules of Practice in Civil Proceedings before the United States District Court for the Central District

---

[1] Earlier, the court had awarded sanctions against Defendant in connection with a failure to appear for mediation. The cost and fee requests did not duplicate the amounts awarded earlier.

of California.  In particular, Local Rule 55-3, titled "Default Judgment—Schedule of Attorneys' Fees," provides:

> When a promissory note, contract or applicable statute provides for the recovery of reasonable attorneys' fees, those fees shall be calculated according to the following schedule:

| Amount of Judgment | Attorneys' Fees Awards |
|---|---|
| $0.01–$1,000 | 30% with a minimum of $250.00 |
| $1,000.01–$10,000 | $300 plus 10% of the amount over $1,000 |
| $10,000.01–$50,000 | $1200 plus 6% of the amount over $10,000 |
| $50,000.01–$100,000 | $3600 plus 4% of the amount over $50,000 |
| Over $100,000 | $5600 plus 2% of the amount over $100,000 |

> This schedule shall be applied to the amount of the judgment exclusive of costs. An attorney claiming a fee in excess of this schedule may file a written request at the time of entry of the default judgment to have the attorney's fee fixed by the Court.  The Court shall hear the request and render judgment for such fee as the Court may deem reasonable.

Consulting the local rule's formula, the district court calculated fees of $600.  The court held that, because it was awarding Plaintiff the full amount of his requested costs, "[t]he Court does not believe . . . that further modification of the Local Rule's recommended attorneys' fees award is necessary here.  The Court therefore awards Plaintiff $600 in attorneys' fees."

Plaintiff timely appeals, challenging only the district court's calculation of fees.  Defendant declined to file a responding brief, and we granted Plaintiff's request that we decide this appeal without oral argument.

## STANDARDS OF REVIEW

We review for abuse of discretion a district court's award of attorney's fees under the ADA.  *Armstrong v. Davis*, 318 F.3d 965, 970 (9th Cir. 2003).  But we review de novo questions of law that underlie a court's fee award.  *Id.* at 971. Here, the central legal issue underlying the district court's award of fees is the proper interpretation of Local Rule 55-3. Ordinarily we give great deference to a district court's interpretation of its own local rules.  *Bias v. Moynihan*, 508 F.3d 1212, 1223 (9th Cir. 2007).  That deference rests on the idea that a court that creates a rule is in the best position to apply it to the circumstances of particular cases.  *E.g.*, *Morgan Distrib. Co. v. Unidynamic Corp.*, 868 F.2d 992, 996 (8th Cir. 1989).  But where, as here, the interpretive question is a purely legal one and the judges of the district court have been inconsistent in their interpretation of the rule, the amount of deference that we owe is diminished.  *See Jackson v. Beard*, 828 F.2d 1077, 1079 (4th Cir. 1987) (suggesting that an interpretation of a local rule in a particular case should

be given less deference when the interpretation "is at odds with that of any other . . . judges of the district").

## DISCUSSION

"The general rule in our legal system is that each party must pay its own attorney's fees . . . ." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 550 (2010) (citation omitted). But many federal statutes protecting civil rights, including the ADA, 42 U.S.C. § 12205, contain fee-shifting provisions that allow a "prevailing party" to recover "a reasonable attorney's fee." *Perdue*, 559 U.S. at 550 & n.3. Despite minor textual differences, we interpret those provisions uniformly. *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 601–03, 603 n.4 (2001); *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992).

The district court correctly held that Plaintiff is entitled to a reasonable attorney's fee under 42 U.S.C. § 12205. Plaintiff is indisputably a "prevailing party," because he has secured an "enforceable judgment[] on the merits." *Buckhannon*, 532 U.S. at 603–04. And we see nothing in the record that would render an award of fees unjust. *See Jankey v. Poop Deck*, 537 F.3d 1122, 1130 (9th Cir. 2008) ("A prevailing plaintiff under the ADA should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." (internal quotation marks omitted)). The only remaining question is the calculation of a reasonable fee.

"[A] 'reasonable' fee is a fee that is sufficient to induce a capable attorney to undertake the representation of a meritorious civil rights case." *Perdue*, 559 U.S. at 552. "[T]he district court must strike a balance between granting

sufficient fees to attract qualified counsel to civil rights cases and avoiding a windfall to counsel." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008) (citations omitted). "The way to do so is to compensate counsel at the prevailing rate in the community for similar work; no more, no less." *Id.* "Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation . . . ." *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983). These principles apply equally to prevailing parties who obtain a *default* judgment in a civil rights action. *See, e.g.*, *Fair Hous. of Marin v. Combs*, 285 F.3d 899, 908 (9th Cir. 2002) (applying these principles and, for case-specific reasons, affirming an award of fees "more than five times the amount of compensatory and punitive damage awards combined").

"The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley*, 461 U.S. at 433. Once the court has calculated that amount, known as the lodestar, "[t]here remain other considerations that may lead the district court to adjust the fee upward or downward, including the important factor of the 'results obtained.'" *Id.* at 434. The "lodestar approach" has "achieved dominance in the federal courts" and is "the guiding light of [the Supreme Court's] fee-shifting jurisprudence." *Perdue*, 559 U.S. at 551 (internal quotation marks omitted). Ultimately, the district court has discretion in determining a reasonable fee, but the court must exercise that discretion consistently with the principles described above. *Perdue*, 559 U.S. at 552–53, 558; *Hensley*, 461 U.S. at 433–37.

Here, the district court declined to apply the lodestar approach.  Instead, the court looked to the schedule of fees described in the Central District's Local Rule 55-3.  The local rule's schedule of fees provides a default calculation of fees amounting to a small percentage of the monetary component of a default judgment.  Applying the schedule, the court calculated fees of $600.  Local Rule 55-3 also provides that, upon timely written request, the district court "shall hear the request and render judgment for such fee as the Court may deem reasonable."  In response to Plaintiff's detailed written request, the district court concluded that no "modification" of the $600 calculation was warranted.  In effect, the court interpreted the rule as prescribing a *presumptively correct* award of fees in cases in which prevailing parties claim fees in excess of the scheduled amount.[2]

We read the local rule to require a different procedure.  If a party seeks a fee "in excess of" the schedule and timely files a written request to have the fee fixed by the court, then the court must hear the request and award a "reasonable" fee.  That process does not describe a "modification" of the schedule of fees.  Rather, it prescribes an alternative process when a party invokes it in the proper way at the proper time.

---

[2] Several judges in the Central District have interpreted the rule in the same manner.  Indeed, some judges have ruled that "[o]nly 'an unusual case warrants deviation from the attorneys' fees schedule set forth in the Local Rules.'"  *Constr. Laborers Tr. Funds for S. Cal. Admin. Co. v. Tennyson Elec., Inc.*, No. 2:16-cv-04908-ODW(GJSx), 2016 WL 6602571, at *4 (C.D. Cal. Nov. 8, 2016) (alteration omitted) (quoting *BWP Media USA, Inc. v. P3R, LLC*, No. 2:13-cv-05315 SVW, 2014 WL 3191160, at *5 (C.D. Cal. July 3, 2014)).  Other judges, on the other hand, have interpreted the rule as we do.  *See Powell v. Blackrock Asset Mgmt., LLC*, No. 11-0517-JST (RNBx), 2011 WL 4551450, at *5 (C.D. Cal. Sept. 30, 2011) (using the lodestar method in a default judgment case).

When a party invokes that process, the court is obliged to calculate a "reasonable" fee in the usual manner, without using the fee schedule as a starting point.[3]

Our reasons for reading the local rule in this manner are straightforward.  First, the text of the rule provides that, when a lawyer claims a fee in excess of the scheduled amount, the lawyer is asking "to have the attorney's fee fixed by the Court.  The Court shall hear the request and render judgment for such fee as the Court may deem reasonable."  The rule thus specifies that the district court, not the schedule, will fix the fee when a lawyer seeks more than the schedule provides and that the touchstone for the court's award is reasonableness.  The rule contains no presumption that the schedule is "reasonable" in this situation.

In addition, in a case in which a statute provides for attorney's fees, a "reasonable" fee within the meaning of the local rule is a fee that is "reasonable" under the relevant statute—in this case, the ADA.  *See* 28 U.S.C. § 2071(a) (providing that local rules "shall be consistent with Acts of Congress"); 42 U.S.C. § 12205 ("In any action . . . commenced pursuant to this chapter, the court . . . may allow the prevailing party . . . a reasonable attorney's fee . . . .").  Local Rule 55-3 was last amended in 2003, well after the lodestar method had "achieved dominance" as the principal method for calculating reasonable attorney's fees in civil

---

[3] We need not decide whether Local Rule 55-3 is consistent with the ADA and other civil rights statutes insofar as it authorizes a prescribed attorney's fee in cases in which a party does *not* ask for more than the scheduled amount.  At any rate, it is difficult to see how that issue could ever be presented properly on appeal—any party in a position to complain would necessarily have failed to ask for more than the scheduled amount, thus waiving or forfeiting such a request.

rights cases. *See Gisbrecht v. Barnhart*, 535 U.S. 789, 801 (2002) (noting that the lodestar method "achieved dominance" following three Supreme Court decisions in the mid-1980s). Given that historical background, we do not think that the drafters of the local rule intended to deviate from the well-established lodestar method and set a different fee amount as presumptively reasonable. *Cf. Keene Corp. v. United States*, 508 U.S. 200, 212–13 (1993) (applying the "presumption that Congress was aware of [existing] judicial interpretations [of statutory text] and, in effect, adopted them" when it reenacted that text without change). Instead, the rule gives lawyers who obtain default judgments and who are entitled to statutory fees the option of recovering a set amount without going through the hassle of submitting records.[4]

We emphasize that the lodestar amount is calculated by multiplying "the number of hours *reasonably* expended on the litigation by a *reasonable* hourly rate." *Costa v. Comm'r*

---

[4] The dissent characterizes our holding as a "new rule," but it is nothing of the sort. For more than 30 years, the lodestar approach has been used by district courts across the country to calculate reasonable attorney's fee awards in cases that result in default judgments. *See, e.g.*, *Andrade v. Arby's Rest. Grp., Inc.*, 225 F. Supp. 3d 1115, 1143–44 (N.D. Cal. 2016) (applying the lodestar approach to determine reasonable attorney's fees in a case in which the defendant failed to defend itself); *Obenauf v. Frontier Fin. Grp., Inc.*, 785 F. Supp. 2d 1188, 1206–07 (D.N.M. 2011) (same); *Thomas v. Nat'l Bus. Assistants, Inc.*, No. Civ N82–469, 1984 WL 585309, at *2–3 (D. Conn. Oct. 5, 1984) (same). More fundamentally, there is nothing about a case that ends in a default judgment that justifies departing from the lodestar approach. Whether a case is contested or not, a "reasonable" fee is one that would "induce a capable attorney to undertake the representation of a meritorious civil rights case," and the lodestar approach "yields a fee that is presumptively" sufficient to achieve that goal. *Perdue*, 559 U.S. at 552.

*of Soc. Sec. Admin.*, 690 F.3d 1132, 1135 (9th Cir. 2012) (per curiam) (alteration omitted) (emphases added) (quoting *Hensley*, 462 U.S. at 433). In calculating the lodestar, district courts "have a *duty* to ensure that claims for attorneys' fees are reasonable," *Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1265 (D.C. Cir. 1993) (emphasis added), and a district court does not discharge that duty simply by taking at face value the word of the prevailing party's lawyer for the number of hours expended on the case, *Gates v. Deukmejian*, 987 F.2d 1392, 1398–99 (9th Cir. 1993). Rather, a district court must "ensure that the winning attorneys have exercised 'billing judgment.'" *Case v. Unified Sch. Dist. No. 233*, 157 F.3d 1243, 1250 (10th Cir. 1998). In a contested case, a district court ordinarily can rely on the losing party to aid the court in its duty by vigorously disputing any seemingly excessive fee requests. *Moreno*, 534 F.3d at 1116. In a case in which a defendant fails to appear or otherwise defend itself, however, the burden of scrutinizing an attorney's fee request—like other burdens—necessarily shifts to the court. *Cf. Tuli v. Republic of Iraq (In re Tuli)*, 172 F.3d 707, 712 (9th Cir. 1999) (holding that a court "has an affirmative duty" to assure itself that it has personal jurisdiction over a defendant before entering a default judgment, even though personal jurisdiction need not be addressed sua sponte in contested cases).[5]

---

[5] Because district courts have a duty to ensure that attorney's fee requests are reasonable, we find unpersuasive the dissent's dire warnings about the real-world consequences of our decision. Indeed, the cases cited by the dissent in which district courts have sanctioned or reproached lawyers for inflating hourly rates or hours billed go only to show that district courts are well equipped to ferret out unreasonable fee requests. In a typical default situation, we would expect fee awards to be modest.

By treating the fee schedule as presumptively reasonable, rather than using the lodestar approach to calculate a presumptively reasonable fee, the district court misinterpreted Local Rule 55-3 and abused its discretion.  Furthermore, we think that the district court's erroneous methodology may have affected the fee award—Plaintiff achieved practically all of the relief that he sought, "excellent results" by any measure, but the court awarded him a tiny percentage of the requested fees.  *See Corder v. Gates*, 947 F.2d 374, 378 (9th Cir. 1991) (applying harmless error analysis in the context of a challenge to an attorney's fee award).  On this record, we cannot understand how the award of $600 meets the court's obligation to "compensate counsel at the prevailing rate in the community for similar work; no more, no less."  *Moreno*, 534 F.3d at 1111.  We therefore vacate the award of fees and remand for reconsideration in a manner consistent with this opinion.  We express no view on the appropriate award of fees.

**Award of fees VACATED and REMANDED for reconsideration.**  Costs on appeal awarded to Plaintiff-Appellant.

CHRISTEN, Circuit Judge, concurring:

I join the court's opinion, which is consistent with the Supreme Court's longstanding rule that fees are awarded to prevailing parties in civil rights cases—including ADA cases—according to the lodestar method. *See Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 550–53 & n.3 (2010); *Hensley v. Eckerhart*, 461 U.S. 424, 433–37 (1983); *Jankey v. Poop Deck*, 537 F.3d 1122, 1130–31 (9th Cir. 2008). I write separately to clarify that, in my view, the correct method for calculating fees in an ADA lawsuit ending in default judgment in the Central District of California should not hinge on whether a prevailing party opts out of the Central District's local fee schedule. As the court's opinion recognizes, "the district court has discretion in determining a reasonable fee, but the court must exercise that discretion consistently with the principles" underlying the lodestar method. Opinion at 9 (citing *Perdue*, 559 U.S. at 552–53, 558; *Hensley*, 461 U.S. at 433–37). By my read, that limitation on the district court's discretion leaves no room for the district court to adhere to its local default judgment fee schedule in a civil rights case like this one.

The dissent worries that the court's decision overrides the district court's considered judgment about an appropriate fee award—and takes particular umbrage at the $36,000 fee request. *See* Dissent at 29. But the court does not endorse the amount requested, or any other amount. Instead, it remands for calculation of a reasonable fee award, conspicuously expressing "no view on the appropriate award of fees."

District courts enjoy considerable latitude regarding attorney's fee awards when they start from the right place, but

in this case the district court did not.  The Central District's default judgment fee schedule is fundamentally at odds with the fact that "private enforcement of civil rights legislation relies on the availability of fee awards."  *Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008).  In civil rights cases, the fee schedule must yield.

---

KLEINFELD, Senior Circuit Judge, dissenting:

I respectfully dissent.

The majority creates a new rule, that the "lodestar," that is, the claimed hours multiplied by the claimed hourly rate, must be the district court's starting point for attorneys' fee awards in substantially uncontested default judgment cases, despite local rules to the contrary, in ADA cases and, apparently, in all civil rights cases.  We have found no decision by our court or by our sister circuits holding that the lodestar fee is the presumptively reasonable fee in substantially uncontested default judgment cases.  In this case, the district court applied a local rule that set a presumptive fee for the default judgment of $600.  The appeal seeks more than $36,000 for work claimed by counsel.  The majority's new rule means starting with more than $36,000 as the presumptive fee in this default judgment, where the defendant filed an answer and did nothing else to oppose the claim.  I think the district court properly used the local rule's fee schedule for default judgments as the starting point and acted within its discretion to reject an increase, so we should affirm.

The majority's new rule is not supported by the statute or existing law. It will likely generate an unreasonable and oppressive result in this case and in default judgment cases generally. A lot of little pizza joints, convenience stores, used book stores, seamstress shops, dry cleaners, and the like, will likely be put out of business by this new rule. And the money will not go to wheelchair ramps or toilet stalls accommodating the disabled. It will go to the lawyers who bring the cases.

The ADA says that attorneys' fee awards are discretionary and must be "reasonable":

> In any action or administrative proceeding commenced pursuant to this chapter, the court or agency, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee, including litigation expenses, and costs, and the United States shall be liable for the foregoing the same as a private individual.[1]

The statute does not say that "reasonable" means claimed hours multiplied by claimed rates. We, not Congress, have said so in the context of contested cases,[2] but we have never said so in the context of substantially uncontested default judgments.

---

[1] 42 U.S.C. § 12205.

[2] *E.g. Antoninetti v. Chipotle Mexican Grill, Inc.*, 643 F.3d 1165, 1176 (9th Cir. 2010) (citing *Perdue v. Kenny A.*, 559 U.S. 542, 550–51 (2010)).

The controlling law on attorneys' fees in default judgments is the fee schedule established by the local rules of the Central District of California.[3]  The Federal Rules of Civil Procedure have the force of law.[4]  They authorize local rules not conflicting with the federal rules.[5]  The Central District provision was such a rule.  Unless declared invalid, the Central District's local rule also has the force of law.[6]

Consistent with federal law, the local rule includes an escape provision for default judgment cases where the "reasonable" fee award would be higher than the scheduled amount:

> **L.R. 55-3** *Default Judgment - Schedule of Attorneys' Fees*.  When a promissory note, contract or applicable statute provides for the recovery of reasonable attorneys' fees, those fees shall be calculated according to the following schedule:

---

[3] C.D. Cal. R. 55-3.

[4] 28 U.S.C. § 2072; *Marshall v. Gates*, 44. F.3d 722, 724 (9th Cir. 1995) (citing *United States v. Hvass*, 355 U.S. 570, 575 (1958)).

[5] Fed. R. Civ. P. 83.

[6] *Marshall*, 44 F.3d at 724.

20        VOGEL V. HARBOR PLAZA CENTER

| *Amount of Judgment* | *Attorneys' Fees Awards* |
|---|---|
| $0.01–$1,000 | 30% with a minimum of $250.00 |
| $1,000.01–$10,000 | $300 plus 10% of the amount over $1,000 |
| $10,000.01–$50,000 | $1200 plus 6% of the amount over $10,000 |
| $50,000.01–$100,000 | $3600 plus 4% of the amount over $50,000 |
| Over $100,000 | $5600 plus 2% of the amount over $100,000 |

> This schedule shall be applied to the amount of the judgment exclusive of costs. *An attorney claiming a fee in excess of this schedule may file a written request at the time of entry of the default judgment to have the attorney's fee fixed by the Court. The Court shall hear the request and render judgment for such fee as the Court may deem reasonable.*[7]

Because both the ADA and the local rule provide for "reasonable" fees, they are consistent, not conflicting.

---

[7] C.D. Cal. R. 55-3 (emphasis added).

The Advisory Committee Note to the 1993 amendment to
Federal Rule of Civil Procedure 54 expressly suggests that
courts adopt fee schedules like the Central District's:

> Subparagraph (D) explicitly authorizes the
> court to establish procedures facilitating the
> efficient and fair resolution of fee claims. A
> local rule, for example, might call for matters
> to be presented through affidavits, or might
> provide for issuance of proposed findings by
> the court, which would be treated as accepted
> by the parties unless objected to within a
> specified time. *A court might also consider
> establishing a schedule reflecting customary
> fees or factors affecting fees within the
> community*, as implicitly suggested by Justice
> O'Connor in Pennsylvania v. Delaware Valley
> Citizens' Council, 483 U.S. 711, 733 (1987)
> (O'Connor, J., concurring) (how particular
> markets compensate for contingency). Cf.
> Thompson v. Kennickell, 710 F. Supp. 1
> (D.D.C. 1989) (use of findings in other cases
> to promote consistency). The parties, of
> course, should be permitted to show that in
> the circumstances of the case such a schedule
> should not be applied or that different hourly
> rates would be appropriate.[8]

---

[8] Fed. R. Civ. P. 54(d)(2)(D) advisory committee's note to 1993
amendment (emphasis added); *see Republic of Ecuador v. Mackay*,
742 F.3d 860, 865 (9th Cir. 2014) (finding that the advisory committee's
notes are a particularly reliable indicator of legislative intent and are
entitled to weight).

A report of the Third Circuit Task Force addressing attorneys' fee awards recommended the adoption of district-wide fee schedules, as well as "local rules or orders that would tend to standardize the practice of court-awarded attorneys' fees," due to the unreasonable disparities otherwise brought about by lodestar awards.[9]  A report of the Federal Courts Study Committee likewise recommended that courts adopt "reasonable rate schedules . . . for determining attorneys' fee awards in cases where such awards are required or permitted by rule or statute" and "further study . . . alternatives" "because of the lodestar method's problems," including that it may "unduly burden judges and give lawyers incentives to run up hours unnecessarily, which can lead to overcompensation or to later litigation over fee padding."[10]

Federal courts use fee schedules in Maryland, Alaska, and the D.C. Circuit.[11]  In state courts, vast numbers of default

---

[9] REPORT OF THE THIRD CIRCUIT TASK FORCE, COURT AWARDED ATTORNEY FEES, 108 F.R.D. 237, 260–61, 271 (1985).

[10] REPORT OF THE FEDERAL COURTS STUDY COMMITTEE 25, 104–05 (April 2, 1990).

[11] *See, e.g.*, D. Md. R. App'x B (adopting a fee schedule for "cases in which a prevailing party would be entitled, by applicable law . . . to reasonable attorneys' fees based on a set of criteria including hours and rates"); *Salazar ex rel. Salazar v. District of Columbia*, 809 F.3d 58, 62, 64 (D.C. Cir. 2015) (approving district courts' reliance on fee schedules for determining prevailing market rates) (citing *Covington v. District of Columbia*, 57 F.3d 1101 (D.C. Cir.) (noting that the D.C. Circuit has "approved of the district court's use of the *Laffey* matrix" and that the *Laffey* matrix has "been relied upon, at least in part, by six District of Columbia district judges"), *cert. denied*, 516 U.S. 1115 (1996)); *Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*, 738 F.3d 960, 972–73 (9th Cir. 2013) (noting that federal courts sitting in diversity apply Alaska R. Civ.

judgments are rendered in bill collection cases. State courts use fee schedules for default judgments,[12] and in some cases more generally.[13] We apply these state court fee rules in appropriate diversity cases.[14] Federal courts have less debt collection work, but still plenty. Vogel's counsel undoubtedly would have been familiar with the use of fee

---

P. 82, which sets a fee schedule in civil cases, including default judgments).

[12] California, Utah, and Washington courts use presumptive fee schedules for default judgments. Idaho and New Mexico courts set presumptive limits on default judgment fee awards. *See, e.g.*, California Rules of Court, Rule 3.1800(b) ("A court may by local rule establish a schedule of attorney's fees to be used by that court in determining the reasonable amount of attorney's fees to be allowed in the case of a default judgment"); California Superior Court Rules in the counties of Alameda (App'x B), Contra Costa (Rule 2.40), Imperial (Rule 3.8.7), Kern (Rule 3.6), Kings (Add. 1, Rule 401), Los Angeles (Rules 3.207, 3.214), Monterey (Rule 8.01), Orange (Rule 366), Placer (Rule 20.7), Riverside (Rule 3190), San Diego (Rule 2.5.10), San Francisco (Rule 6.6(D)(2)(f), App'x A), Santa Clara (Rule 14, Form CV-5021), and Stanislaus (Rule 3.13); Idaho R. Civ. P. 54(e)(4); New Mexico Second Judicial District (LR2-202); New Mexico Eleventh Judicial District (LR11-209); Utah R. Civ. P. 73; Washington County District Court Rules in the counties of Chelan (Rule 54), King (Rule 54), San Juan (Rule 54), Spokane (Rule 54(d)(1)), Stevens (Rule 54(d)(3)), and Thurston (Rule 54).

[13] Alaska courts, some California courts, and some New Mexico courts use presumptive fee schedules in civil cases generally. *See, e.g.*, Alaska R. Civ. P. 82; California Superior Court Rules in the counties of Amador (Rule 11.10), Los Angeles (Rule 3.214), Mendocino (Rule 19.2), and Sacramento (Rule 2.14); New Mexico Third Judicial District (LR3-208).

[14] *See Alaska Rent-A-Car*, 738 F.3d at 973 (citing *MRO Commc'ns, Inc. v. Am. Tel. & Tel. Co.*, 197 F.3d 1276, 1282 (9th Cir. 1999)).

schedules in his home state of California, both in state and federal courts.[15]

The majority errs in suggesting that federal district courts, as a rule, use lodestar to set attorneys' fees in default judgment cases.  Courts often rely on local fee schedules to set a presumptive fee or reduce the lodestar calculation, even in cases where a higher award is sought.[16]  Indeed, we have

---

[15] *See supra* nn. 12, 13.

[16] *E.g. Minx Int'l, Inc. v. Rue 21 Inc.*, No. 15-cv-05645, 2017 WL 2961546, at *5–6 (C.D. Cal. July 10, 2017); *Herrera v. Mitch O'Hara LLC*, 257 F. Supp. 3d 37, 46–47 (D.D.C. 2017); *Trujillo v. Singh*, No. 16-cv-01640, 2017 WL 1831941, at *2–3 (E.D. Cal. May 8, 2017); *Constr. Laborers Tr. Funds for S. California Admin. Co. v. Tennyson Elec., Inc.*, No. 16-cv-04908, 2016 WL 6602571, at *4 (C.D. Cal. Nov. 8, 2016); *Alvarez v. Lakeview Recovery Grp., LLC*, No. 16-cv-01047, 2016 WL 10968665, at *3–4 (C.D. Cal. Sept. 26, 2016); *Calderon Recinos v. JMZ Constr., LLC*, No. 15-cv-00406, 2016 WL 3162820, at *5 (D. Md. June 7, 2016); *Michaels v. Nohr*, No. 15-cv-06353, 2015 WL 12532177, at *10 (C.D. Cal. Dec. 17, 2015); *Mata v. G.O. Contractors Grp., Ltd.*, No. 14-cv-03287, 2015 WL 6674650, at *6 (D. Md. Oct. 29, 2015); *Crawford v. Dynamic Recovery Servs., Inc.*, No. 13-cv-01328, 2014 WL 130458, at *3 (S.D. Cal. Jan. 10, 2014); *Eun-A Choi v. Insan Am. Inc.*, No. 13-cv-05461, 2013 WL 12144999, at *5 (C.D. Cal. Sept. 30, 2013); *Embassy of Fed. Republic of Nigeria v. Ugwuonye*, 297 F.R.D. 4, 15 (D.D.C. 2013); *Superior Sales W., Inc. v. Revival Enterprises, Inc.*, No. 13-cv-00352, 2013 WL 12136966, at *4 (C.D. Cal. June 18, 2013); *Thomasville Furniture Indus., Inc. v. Thomas*, No. 10-cv-00130, 2012 WL 1476070, at *2 (W.D.N.C. Apr. 24, 2012); *Bradley v. 9727 Pulaski, Inc.*, No. 11-cv-02708, 2012 WL 669048, at *1–2 (D. Md. Feb. 27, 2012); *Maryland Elec. Indus. Health Fund v. K & L Elec., Inc.*, No. 09-cv-00778, 2010 WL 3056935, at *1–2 (D. Md. Aug. 3, 2010); *IO Grp., Inc. v. Jordan*, No. 09-cv-00884, 2010 WL 2231793, at *4–5 (N.D. Cal. June 1, 2010); *Monge v. Portofino Ristorante*, 751 F. Supp. 2d 789, 800–01 (D. Md. 2010); *Craigslist, Inc. v. Naturemarket, Inc.*, 694 F. Supp. 2d 1039, 1067–68 (N.D. Cal. 2010); *United States ex rel. Cericola v. Fed. Nat'l Mortg.*

affirmed the use of the Central District's fee schedule to set a reasonable fee in an ADA default judgment case, albeit in an unpublished decision.[17]

The concerns noted by the Federal Courts Study Committee and the Third Circuit Task Force have particular force in substantially uncontested default judgment cases. There is a clear distinction between the lodestar cases and substantially uncontested default judgments. The distinction makes a difference. In a contested case, the opposing side can be expected to challenge whatever claimed hours are unfair. As we noted in *Moreno v. City of Sacramento*, "it may be difficult for the district court to identify the precise spot where a fee request is excessive," so "the burden of producing a sufficiently cogent explanation can mostly be placed on the shoulders of the losing parties, who not only have the incentive, but also the knowledge of the case to point out such things as excessive or duplicative billing practices."[18]   But in substantially uncontested default judgments, where the opposing party has not appeared to contest the claimed fee, there is no such check against the ills noted by the Federal Courts Study Committee and the Third Circuit Task Force. The majority opinion says that district courts must bear the burden of pouring through the materials supporting the fee request. But as *Moreno* suggests, this may be difficult for district courts lacking the "knowledge of the

---

*Assoc.*, No. 03-cv-02294, 2010 WL 11509044, at *4, *7 (C.D. Cal. Feb. 19, 2010); *Chanel, Inc. v. Doan*, No. 05-cv-03464, 2007 WL 781976, at *6–7 (N.D. Cal. Mar. 13, 2007); *Essex v. Randall*, No. 03-cv-03276, 2006 WL 83424, at *5 (D. Md. Jan. 11, 2006).

[17] *Moreno v. La Curacao*, 463 F. App'x 669, 671 (9th Cir. 2011).

[18] 534 F.3d 1106, 1116 (9th Cir. 2008).

case to point out such things as excessive or duplicative billing practices."[19]  Nor is there any good reason to impose this task on busy judges, whose courts have adopted fee schedules like those recommended by the Advisory Committee.  Using lodestar as the starting point for fees in such cases is an invitation to fraud or abuse in the form of excessive hours, duplicative billing, unjustified work, and inflated rates.  By shifting the focus to lodestar, the majority replaces a presumptively reasonable fee award with a calculation based upon uncontested claims for time spent and hourly rates.

The majority says that the justification for starting with lodestar is that this is a civil rights case.  But differentiating civil rights cases on default judgment so that plaintiffs' attorneys can run up large amounts of fees is contrary to how the Supreme Court has described lodestar.  The Supreme Court has held that in such cases, "reasonable fees . . . are to be calculated according to the prevailing market rates in the relevant community."[20]  Starting with the local rule's fee schedule establishes a presumptive fee that is precisely "the prevailing market rate[] in the relevant community."  What other lawyers get in a default judgment case, the market rate, is typically the scheduled fee.

The majority cites *Fair Housing of Marin v. Combs* as its only authority for extending lodestar to substantially uncontested default judgments, but that race discrimination

---

[19] *Id.*

[20] *Blum v. Stenson*, 465 U.S. 886, 895 (1984).

case was heavily litigated.[21]   The default stemmed from a sanction based on the defendant's obdurate refusal to provide discovery and misrepresentations to the court.[22]   *Fair Housing v. Combs* was more or less the opposite, in terms of the extent of counsel's efforts, of the case before us.  There was a defendant on the other side from beginning to end, litigating vigorously and unfairly.

Unlike *Fair Housing v. Combs*, Vogel's case was not heavily litigated.  It was barely litigated at all.  After filing an answer, the defendant engaged in no litigation whatsoever.  The defendant made no misrepresentations to the court, as had been made in *Fair Housing v. Combs*.  The concerns raised by the Federal Courts Study Committee and the Third Circuit Task Force, along with the concerns I have raised about applying lodestar in default judgment cases, all materialized in the case before us.  Vogel's attorneys ginned up a $36,000 claim for doing nothing besides generating papers to make it look like the parties were doing something.

Vogel's counsel characterized this as a "year and a half" of litigation, which is misleading.  The details make it clear that this was a fairly routine default.  Vogel's lawyers, the Disabled Advocacy Group, filed Vogel's complaint on June 16, 2014.  Albert Robles, Esq., filed an answer on July 30, 2014, with various denials and affirmative defenses.  Tafoya

---

[21] 285 F.3d 899, 905–06 (9th Cir. 2002).

[22] *Id.*; *see Fair Hous. of Marin v. Combs*, No. 97-cv-1247, 2000 WL 365029, at *2 (N.D. Cal. Mar. 29, 2000) (detailing the case's two-year history of litigation and the court's entry of terminating sanctions due to the defendant's "repeated and egregious abuses of civil discovery, and . . . failure to heed the [court's] clear warning").

& Garcia withdrew as counsel a couple of months later, on September 18, 2014, after no litigation, substituting Robles as defense counsel of record. Evidently the defense was initially farmed out by Tafoya & Garcia to Robles (who filed the answer in the first place), and then Robles became counsel of record when Tafoya & Garcia withdrew. Robles never filed another paper in the case. Nor did Tafoya & Garcia file any other papers, except to withdraw as counsel. Nor did either of them do anything else to litigate the case, so far as the record shows. They never showed up for hearings, never argued in court, and never filed any papers.

At the scheduled pretrial conference a year after the substitution of counsel, Robles did not appear. The judge noted that Robles had not participated in the preparation of any of the pretrial documents, nor in the pretrial conferences, nor in anything else. Vogel's lawyer moved that the answer be stricken and the defendant defaulted. The judge, after requiring notice both to Robles and to the defendant, did so.

An easier case for Vogel to win cannot be imagined. There was no active litigation. Vogel's counsel filed several papers labeled "joint" that were not really "joint" at all. The record shows no participation by anyone from the defense. The "Joint Rule 26(F) Report" that Vogel's lawyers filed, for example, says that "Plaintiff and Defendant" "request" a procedure, "believe" something, "estimated" something, and so forth, but it was never signed by the defense. The defense did not participate in the preparation of this document. There was no reason to think that the defense requested, estimated, or believed anything attributed to it by Vogel's counsel.

The mediation also appears to have stemmed from the falsely labeled "joint" request and another, declaring that "the

parties" request mediation, again signed only by Vogel's counsel. The defense never participated in the preparation of this document, either. Though Vogel's papers made this look like a lawsuit with two sides participating, it was not. In Vogel's attorney's declaration in support of the entry of default, he admitted that the defendant and its attorney "did not participate in the preparation of any pretrial documents."

Vogel's lawyers obtained a $2,947.44 sanction award for hours claimed for the mediation that never occurred. But after the default, they claimed at least an additional $3,150 relating to that mediation, even though the district court had already granted all of the mediation fees Vogel's lawyers requested in its earlier sanction award. Vogel's lawyers put a lot of paper through the printer on pretrial motions, motions in limine, and other filings, but in fact they had no reason to think that there would be a trial or any other contest in the case, and indeed none took place. Oddly, Vogel's lawyers even claimed hours spent to "prepare and file [an] answer to [the] complaint," even though Vogel was the plaintiff and did not file an answer.

Vogel's counsel had engaged in this sort of litigation conduct before. The Central District has an extensive history with Vogel and with this law firm, which it doubtless considered in applying its discretion to the $36,000 claim for attorneys' fees. In one ADA case, the court noted that the firm's "mischaracterization of [its] hourly rates in case law is unsettling."[23]   The court noted that the firm claimed "excessive" hours for "unopposed and/or duplicate motions" that were "nearly identical" to others from the "hundreds, if

---

[23] *Vogel v. Dolanotto, LLC*, No. 16-cv-02488, 2018 WL 1684303, at *4 (C.D. Cal. Apr. 5, 2018).

not thousands, of cases" it had filed on Vogel's behalf, "many of which have identical legal issues and similar factual issues."[24]  The court noted that the firm copied a court order "almost word for word," then claimed that the filing took "nearly seven hours to draft."[25]  In another ADA case, the court noted that it "is extremely concerned about [the firm]'s potential misrepresentations with respect to [c]ounsel's hourly rates."[26]  The court noted that the leader of the firm "almost double[d] [his] rates in the span of two months," which the court concluded was "patently unreasonable" and a "blatant misrepresentation."[27]  The Central District recently noted that the leader of the firm has been "suspended from the practice of law" for making "misrepresentations to the [c]ourt and opposing counsel[.]"[28]  This was after the firm "falsely represented to this [c]ourt and [d]efendant, over many months of litigation, that [Vogel] encountered access barriers during a prefiling visit to the restaurant that he *never actually made*[.]"[29]  Other district courts have faced similar

---

[24] *Id.* at *5–6.

[25] *Id.* at *5.

[26] *Rush v. Denco Enterprises, Inc.*, No. 11-cv-0030, 2012 WL 3206674, at *4 (C.D. Cal. Aug. 3, 2012).

[27] *Id.*

[28] *Dolanotto*, 2018 WL 1684303 at *3 n.3 (citing *Matter of Hubbard*, No. 11-O-14081, 2016 WL 4184002 (Cal. Bar. Ct. Aug. 4, 2016)).

[29] *Id.* at *5 n.5; *see also Vogel v. Sym Properties, LLC*, No. 15-cv-09855, 2017 WL 4586348, at *6–8 & n.4 (C.D. Cal. August 4, 2017).

problems with this same law firm,[30] noting in one ADA case, for example, that the firm billed "one hour [for] drafting the boilerplate complaint . . . when it was identical, except for the names of defendants and the establishment, to the thirty others his client in this case had filed in this district."[31]  We upheld terminating sanctions against Vogel and this same law firm in another ADA case for falsifying evidence:

> The district court, on the basis of evidence before it, reasonably determined that both Vogel and his attorney participated in a pattern of falsification of evidence that amounted to bad faith.  Despite multiple requests . . . Vogel never produced any documentation supporting a different pre-Complaint visit.  Nor did Vogel provide a sworn statement explaining why he described in such detail the facts of a visit he later acknowledged did not occur, although he could have attached such a declaration to his Errata Sheet, to his amended motion for summary judgment, or to his opposition to the motion for sanctions.  On this record, the district court did not abuse its discretion by issuing terminating sanctions.[32]

---

[30] *See, e.g.*, *White v. GMRI*, No. 04-0620, 2006 WL 947768, at *2 (E.D. Cal. April 12, 2006); *White v. Sutherland*, No. 03-cv-2080, 2005 WL 1366487, at *4–6 (E.D. Cal. May 6, 2005).

[31] *Sutherland*, 2005 WL 1366487, at *6.

[32] *Vogel v. Tulaphorn, Inc.*, 637 F. App'x 344, 345 (9th Cir.), *cert. denied*, 137 S. Ct. 173 (2016).

We upheld sanctions against the firm's lead attorney in yet
another ADA case, where he falsified the signature of his
deceased mother in an attempt to secure a favorable
settlement:

> Any rational attorney representing a plaintiff
> in an ADA access case would know that if his
> client died, the defendants would want to
> know about it, especially before signing a
> settlement agreement that promised
> prospective relief.   And by sending the
> defendant an agreement after his mother's
> death that purported to contain her signature
> when it was not in fact her signature, Hubbard
> created the impression that she was still alive.
> Hubbard provides no coherent innocent
> explanation for this conduct, and the most
> logical conclusion to be drawn is that he
> intended to deceive the defendant.   Such
> conduct rises to the level of recklessness and
> bad faith.[33]

This kind of history likely and permissibly influences a
district court's exercise of discretion.   Not every law firm
representing litigants deserving of special protections is itself
a knight in shining armor.

Of course, this is an ADA case, and removing barriers to
access for the disabled is a good cause.   The statute
encourages private attorneys general accordingly by adopting
the English rule, awarding reasonable attorneys' fees, in place

---

[33] *Hubbard v. Plaza Bonita, LP*, 630 Fed. App'x 681, 683 (9th Cir.),
*cert. denied*, 137 S. Ct. 146 (2016).

of the usual American rule.  But even a good cause can be abused.  Today's majority decision encourages abuses of this sort by creating an incentive to puff up the presumptive fee in default judgment cases.  Starting with the local rule's fee schedule as the presumptive fee makes sense because the Supreme Court has said that starting with what other lawyers get is a good idea, and what other lawyers get in a default judgment case is typically the scheduled fee.  Such a presumptive fee, subject to adjustment for reasonableness, is consistent with the ADA, the legal force of local rules, and the Supreme Court and this court's precedents.  Today's decision, by failing to distinguish between substantially uncontested default judgments and contested cases, doubtless will generate considerable abuse.  There is no good reason to treat the lodestar amount as the presumptively reasonable fee in a substantially uncontested default judgment, even though there is in fully contested litigation.  Doing so invites such abuse.